# Federal Defenders
## OF NEW YORK, INC.

52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

*David E. Patton*
Executive Director
and Attorney-in-Chief

*Appeals Bureau*
Barry D. Leiwant
Attorney-in-Charge

June 9, 2020

**BY ECF**
Honorable John F. Keenan
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Tyriek Skyfield*
              No. 11-cr-912

Dear Judge Keenan:

     I write in reference to the brief I filed today in support of Mr. Skyfield's petition under 28 U.S.C. § 2255. I neglected to include Exhibit B with the filing and thus I enclose it herein.

                                         Respectfully submitted,

                                         *s/ Matthew B. Larsen*
                                         Assistant Federal Defender

Encl.
cc:     AUSA Christopher DiMase

# EXHIBIT B

1

```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF NEW YORK
 - - - - - - - - - - - - - - - -X
 UNITED STATES OF AMERICA,       : 08-CR-559(CBA)
                                 :
                                 :
                                 :
        -against-                : United States Courthouse
                                 : Brooklyn, New York
                                 :
                                 :
 ANTHONY PICA,                   : Friday, August 20, 2010
                                 : 10:30 a.m.
        Defendant.               :
                                 :
 - - - - - - - - - - - - - - - -X

         TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
          BEFORE THE HONORABLE CAROL BAGLEY AMON
                 UNITED STATES DISTRICT JUDGE

                    A P P E A R A N C E S:

 For the Government:   LORETTA E. LYNCH, ESQ.
                       United States Attorney
                       Eastern District of New York
                          271 Cadman Plaza East
                          Brooklyn, New York 11201
                       BY: JOHN BURETTA, ESQ.
                          Assistant United States Attorney

 For the Defendant:    LAW OFFICE OF MICHAEL ROSEN
                       Attorney for the Defendant -
                       Anthony Pica
                          61 Broadway
                          Suite 1105
                          New York, New York 10006
                       BY: MICHAEL ROSEN, ESQ.
```

*Anthony D. Frisolone, FAPR, RDR, CRR, CRI, CSR*
*Official Court Reporter*

1          A L S O   P R E S E N T:

3                    UNITED STATES PROBATION DEPARTMENT
                     Eastern District of New York
                            75 Clinton Street
                         Brooklyn, New York 11201
                     BY: ROBERTA HOULTON, U.S.P.O.


Court Reporter:   Anthony D. Frisolone, FAPR, RDR, CRR, CRI
                  Official Court Reporter
                  Telephone: (718) 613-2487
                  Facsimile: (718) 613-2694
                  E-mail: Anthony_Frisolone@nyed.uscourts.gov

Proceedings recorded by computerized stenography.  Transcript produced by Computer-aided Transcription.

1        (In open court.)
2        COURTROOM DEPUTY:  All rise, the United States
3   District Court for the Eastern District of New York is now
4   in session, the Honorable Carol Bagley Amon is now
5   presiding.
6        (Honorable Carol Bagley Amon takes the bench.)
7        COURTROOM DEPUTY:  Calling criminal cause for
8   sentencing in Docket No. 08-CR-559, *United States of America*
9   *against Anthony Pica*.
10            Counsel, please note your appearances for the
11  record.
12       MR. BURETTA:  For the United States of America,
13  Assistant United States Attorney John Buretta.
14            Good morning, your Honor.
15       MS. HOULTON:  Roberta Houlton, Probation.  Good
16  morning, your Honor.
17       THE COURT:  Good morning.
18       (Defendant enters the courtroom.)
19       THE COURT:  All right.
20            Mr. Rosen, is there any legal reason why we
21  shouldn't proceed with sentencing?
22       MR. ROSEN:  No, Judge.
23       THE COURT:  Have you read the presentence report
24  and discussed it with your client?
25       MR. ROSEN:  I have, your Honor.

1          THE COURT:  All right.
2          Mr. Pica, have you had the opportunity to
3  read your presence report?
4          THE DEFENDANT:  Yes, I did.
5          THE COURT:  And have you had the opportunity to
6  discuss it with Mr. Rosen?
7          THE DEFENDANT:  Yes, I did.
8          THE COURT:  Are you satisfied to have him
9  represent you?
10         THE DEFENDANT:  Yes, I am.
11         THE COURT:  Okay.
12         Now, I have a sentencing memorandum from the
13 defendant.  I don't have anything from the Government.
14         MR. BURETTA:  That's correct, your Honor.
15         THE COURT:  All right.
16         Do you want to be heard?
17         Let me ask you first, I'm sorry, I neglected
18 to ask you an important question.
19         Is there any challenge to the guideline
20 calculation here as being accurately calculated?
21         MR. ROSEN:  It's accurately calculated.  I thought
22 you were going to ask me about a Rule 32 objection.  And if
23 you are to ask me, I don't have any Rule 32 objections.
24         I did file with Probation, your Honor, a
25 comment rather than an objection.  I thought the probation

1  department should note, at least -- I filed that in June --
2  and what I did, Judge Amon, was I just indicated to
3  Probation that, in my view, the Government had taken an
4  inconsistent position at the trial of Mr. Pica. At the
5  trial of Mr. Pica before your Honor in that this was his
6  score, he planned this whole thing, he was the number one on
7  the top.
8           And then, in the Antico trial, which your
9  Honor also tried the Government took the position that after
10 Mr. Antico, that Mr. Fish, and then Mr. Maniscalco and to
11 Mr. Delutro and then Mr. Pica somehow came into the picture
12 at that point.
13          I just did that, not as an objection, but
14 just to ask them to consider in the offense portion of the
15 PSR which I believe is Paragraphs 7 to 17 that that's what I
16 thought should be indicated. It's not technically an
17 objection under Rule 32, but I thought it was something I
18 was required to do as Mr. Pica's lawyer; and I just cited
19 the record before your Honor and in both cases, the Pica
20 case and the Antico case, that's the only reaction.
21          THE COURT: What is the Government's position in
22 terms of the hierarchy of defendants in the role that each
23 plays in this unfortunate transaction.
24          MR. BURETTA: Your Honor, the robbery plan,
25 obviously, the Government believes initiated with Anthony

1  Antico who provided that direction to Mr. Maniscalco and Mr.
2  DaLutro.  As of the day of the robbery itself, Mr. Pica was
3  running things.  That was the testimony of Mr. Maniscalco
4  and also the testimony of all of the other witnesses who
5  testified at Mr. Pica and Mr. Antico's trial.  And, in fact,
6  by the day of the robbery Mr. Maniscalco and Mr. Delutro
7  decided to leave because they believed that there was too
8  much law enforcement scrutiny in the area that day.
9              As of that day Mr. Pica who is propelling the
10 robbery plan forward and who is in charge of the people who
11 were on the scene engaged in the robbery.
12             So, by the time in the hours before the
13 robbery Mr. Pica's leading that robbery team, he's directing
14 them as to proceed despite the law enforcement activity in
15 the area.
16             In terms of -- if your Honor is asking in
17 terms of guidelines analysis, I think that makes Mr. Pica
18 correctly and defense counsel is not disagreeing that he has
19 a leadership role as a result of that.  There are certainly
20 other people who played a leadership role and who are
21 causing this robbery plan to be carried out.
22         THE COURT:  There wasn't a leadership role
23 assessed in the presentence report, was there?
24         MR. ROSEN:  I think Mr. Buretta is correct but let
25 me just check it.

1    MR. BURETTA:  I think that's right, Judge.  I also
2 think it wouldn't matter in light of the offense level
3 conduct which is a Level 43; but that's how we view where
4 this defendant fits into the overall plan to engage and we
5 have no objection to the PSR.
6    THE COURT:  And it is correct that Count Three
7 requires a sentence of not less than ten years.
8    MR. BURETTA:  Correct, Judge.
9    MR. ROSEN:  Yes, Judge.
10   THE COURT:  Okay.
11   MR. ROSEN:  Those are my comments on the PSR.  And
12 if your Honor would permit me, most respectfully, I did
13 submit a sentencing memorandum to your Honor and served it
14 on the Government and I'd like to just at first refer to
15 §3553(a).
16        Now, I understand, and painfully aware, that
17 a just and appropriate sentence has to reflect many of the
18 considerations in §3553(a) such as a just sentence and
19 general and specific deterrence, respect for the law; I am
20 totally aware of that.  I am also totally aware what your
21 Honor just mentioned was the mandatory ten-year sentence
22 under Count Three.
23        But, taking into consideration, Judge Amon,
24 two of the factors under §3553(a), one of which being the
25 nature and circumstances of the offense.  And I add to what

1  Mr. Buretta I thought candidly conceded was the hierarchy,
2  so to speak, but I did want to call to your Honor's
3  attention, as I did in my memorandum, that the record
4  reflects that Mr. Pica did not intend to shoot nor harm
5  Antonelli.  The Government witness, Charles Santiago, at
6  transcript 435 to 436 testified that Mr. Pica told him not
7  to hurt or harm Mr. Antonelli.
8              When you look at Application Note 2B,
9  Section 2A 1.1, Application Note 2B, it provides in part:
10 "That if a defendant did not cause the death intentionally
11 or knowingly, a downward departure may be warranted.  And
12 the extent of this departure should be based on defendant's
13 state of mind, degree of risk inherent in the conduct, and
14 the nature of the underlying offense conduct.
15             I think that that application note permits
16 your Honor to consider a sentence less than life
17 imprisonment and I think that the facts behind what I have
18 before you warrant your Honor considering it.
19             Certainly, we know from the trial that
20 Mr. Pica didn't shoot or touch or harm Mr. Antonelli and
21 nothing that anybody in this world can do, can bring this
22 poor man back or, you know, counsel or grieve with his
23 family.
24             Going one step further on the §3553(a) and
25 that's the history and characteristics of the defendant, I

1   will not in open court, obviously, go through the unstable,
2   tumultuous chaotic, choose the appropriate adjective,
3   background and childhood and my client had.  I think I laid
4   it out.
5              As you can see from the audience, the family
6   is here sister, Danielle is here, his little brother Billy,
7   the family and friends are here to show their love and
8   support.
9              But, again, Judge Amon, that this kind of
10  background, as I can put it, chaotic and tumultuous as it
11  was, I think the probation department and Ms. Houlton who
12  was with me when we interviewed Mr. Pica without quoting it
13  exactly so it doesn't become a matter of everybody's
14  talking, his background may be considered a mitigating
15  factor for the purposes of sentencing and that's
16  Paragraph 97 of the presentence report.
17             So, taking together the probation
18  department's statement that it may be considered this awful
19  nightmare as I see it, the background as a mitigating
20  factor, certainly not a defense, and I don't come here,
21  Judge Amon, saying this excuses any kind of unlawful conduct
22  but as a mitigating factor I hope that your Honor will
23  consider it.
24             So, what we have is both that guideline
25  application note as I mentioned and the possibility of your

1  Honor considering a mitigating factor of his background.
2  And we have a 31-year-old man, I believe this is his only
3  criminal conviction.  That's my understanding I know he's in
4  Category I but I believe this is his only criminal
5  conviction.
6              What strikes me, not just the what sister
7  Danielle told you and brother Billy told you, is that having
8  this type of turmoil and uncertainty in his life he was
9  still able to go to school, get a high school diploma, work
10 consistently through all these years.  They may not have
11 been glorious jobs, he worked in a deli and did some
12 plumbing.  But he worked, he worked he went to school, and
13 he and Danielle became a family for Billy, and Billy here
14 who sits in court is a good human being now having Danielle
15 and Anthony Pica as his surrogate parents.  The grandparents
16 helped a lot and they all deserve amazing credit for a
17 really difficult situation.
18             You do have a first offender who has your
19 Honor to give him a chance to get back to society in his
20 lifetime.  He has the education; he has the intelligence.
21 He has the ability, the work ethic to contribute to society
22 and I ask your Honor most respectfully and sincerely, based
23 on everything that I could put together from this family,
24 it's just really a testament to some of these people who
25 have kept, and you know what I find extraordinary, after all

1  these years in this business, is the love and support that
2  Danielle and Anthony still have for the parents who were
3  going through such a difficult, difficult situation.
4           You know, I learned in closing, Judge.  I
5  learned something from someone I think we both have had
6  contact with and I know Mr. Buretta has had contact.  It
7  came out in a case that I had before Chief Judge Dearie some
8  years ago and I've kind of adopted that as a mantra going
9  forward and that is there are two kinds of defendants:  One
10 is salvageable and one isn't salvageable.
11          I submit to your Honor that all that I have
12 attempted to get before this court demonstrates that Anthony
13 Pica is salvageable.  And, if given a chance to come out of
14 prison, as I think Grandma DeMarco said I would like to be
15 alive when and if he can ever come out of a federal prison,
16 he will contribute to his family, to society, to the
17 community and not ever find himself in this horrible,
18 horrible spot again.
19          I ask your Honor to consider not imposing a
20 life sentence and imposing a sentence that gives this man a
21 chance at some life after he has served his time.  Thank
22 you, Judge.
23       THE COURT:  Before I hear from Mr. Pica, does the
24 Government want to make any comment one way or the other.
25       MR. BURETTA:  Briefly, Judge.

1              We defer to your Honor's assessment as to an
2    appropriate sentence.  We believe that the guideline
3    sentence would be appropriate; a somewhat lower sentence
4    would also be appropriate.  The factors that we look to
5    concern, one, that this defendant had committed other crimes
6    as your Honor heard at the trial.  He had planned other
7    robberies; he had engaged in narcotics transactions.  So, he
8    doesn't come before the Court as a person who hasn't engaged
9    in other crimes.
10             And, secondly, we think it's important, as
11   alluded to a few minutes ago, when your Honor was asking
12   about the defendant's role in this and your Honor saw from
13   the trial testimony.  This defendant had an important choice
14   that day and he made all of the wrong choices purposefully.
15   He chose to get a team and told them to get a gun.  He knew
16   they would have a gun that day.  He sent them in even though
17   they were getting nervous about what they were about to do;
18   even though he saw there were cameras around and there had
19   been police in the area.  And he nonetheless sent these
20   other participants in to this robbery.  And that's why we're
21   here.
22             And we can't bring back Antonelli who had a
23   three-day old baby that day when he died or when he was shot
24   and later died.  We can't bring him back and the defendant
25   needs to be held accountable for that.  Whether he intended

1   to kill him or not, he certainly created a circumstance that
2   day that easily lent itself to what happened.
3           THE COURT:  Mr. Pica, do you want to say anything?
4           THE DEFENDANT:  No thank you, your Honor.
5           THE COURT:  Pardon me.
6           THE DEFENDANT:  I'm sorry.
7           THE COURT:  Do you want to say anything before the
8   Court imposes sentence?
9           THE DEFENDANT:  No, your Honor.
10          THE COURT:  Okay.  Well, there are a number of
11  factors that the Court has to take into account, one of
12  which, of course, the guideline calculation which would
13  suggest that that a term of imprisonment of life which
14  should be imposed in this case.  Now these guidelines are
15  only advisory.
16          The Court has to look to factors under
17  §3553(a) as well and let's just articulate some of those
18  important considerations.
19          One consideration, of course, is the
20  seriousness of the offense and this is an extraordinarily
21  serious offense.  It was a robbery in which a man's life was
22  taken.  It's difficult to think of a more serious offense
23  before this court than this one.
24          There has to be considerations of promoting
25  respect for the law, and obviously, there has to be a

1   substantial sentence here in order to promote respect for
2   the law and to provide a deterrence, another important
3   factor, to criminal conduct.
4              The Court has to look at the history and
5   characteristics of the defendant and the nature and the
6   circumstances of this particular offense.
7              In looking at the nature and circumstances of
8   this offense, as the Government pointed out, Mr. Pica did
9   have a substantial role in this offense:  He recruited the
10  crew and part of that planning included that someone would
11  have a weapon.
12             I don't believe that in planning this, that
13  it was Mr. Pica's intention that the weapon be used but he
14  clearly understood, in directing that one be taken, that
15  that was a serious and distinct possibility.  And,
16  unfortunately, in this case, that possibility came to
17  fruition and Mr. Pica bears responsibility for that.
18             In looking at the history and characteristics
19  of the defendant himself, the defendant, as counsel points
20  out, did have a difficult upbringing.  But obviously, that
21  doesn't excuse the conduct that he engaged in here.  He has
22  no prior criminal record but, as the Government points out,
23  he was, as the testimony at the trial revealed, involved in
24  the planning of other robberies.  So, this is a case that
25  calls out for a substantial sentence.

1   Under all of the circumstances of the case,
2   the Court concludes as even the Government implicitly
3   recognizes that a term of life imprisonment in this case is
4   not one that is necessarily required and it's the Court's
5   view that a term of life imprisonment is, in fact, an overly
6   severe sentence for a couple of the reasons.  One of which
7   was that it was not Mr. Pica's intention that the gun be
8   used.
9   And, second of all, I think, two, that one
10  consideration the Court could look at is I think that this
11  crime committed, were he prosecuted in the State for a
12  similar crime, I don't think that he would be facing a
13  mandatory life term.
14  So, it's the sentence of this Court that on
15  Count One he is sentenced to the maximum 240 months with a
16  three-year term of supervised release;
17  That he participate in mental health
18  treatment program approved by the probation department;
19  That he receive concurrent sentences on
20  Counts Two and Four to the same -- with the same amount of,
21  well, Count Four would be I believe is a five-year term of
22  supervised release.
23  On Count Three, I'm going to sentence him to
24  consecutive 10-year terms for a total prison term of
25  30 years.

Sentencing                                                                16

1         The supervised release terms on Counts One
2    and Two are three years.  On Counts Three and Four, it's
3    five years.
4         And a special assessment of $400 on each of
5    the counts.
6         Mr. Pica, you have a right to appeal.  Any
7    Notice of Appeal has to be filed within 14 days.  Do you
8    understand that.
9         THE DEFENDANT:  Yes, I do, your Honor.
10        THE COURT:  Does the Government have anything
11   further?
12        MR. BURETTA:  No, your Honor.
13        COURTROOM DEPUTY:  Did you say no fine?
14        MR. ROSEN:  I don't think there are any open
15   counts.
16        THE COURT:  There are no open counts.
17        MR. ROSEN:  Maybe the underlying.
18        THE COURT:  In light of the financial information,
19   I'm not further imposing a fine.
20        MR. ROSEN:  Judge Amon, there may be an underlying
21   indictment that needs to be --
22        THE COURT:  Also, let me just make clear there are
23   two other conditions of supervised release.  One is that he
24   participate in mental health treatment.  Another is that he
25   participate in outpatient or inpatient drug treatment as

Sentencing                                           17

1   recommended by the probation department.  Those are
2   additional considerations.
3            MR. ROSEN:  Yes, Judge.
4            THE COURT:  I don't know that there's an
5   underlying indictment.
6            MR. BURETTA:  I think there is.  We move to
7   dismiss.
8            MR. ROSEN:  All right.
9            MR. BURETTA:  Thank you.
10           MR. ROSEN:  Thank you.
11           (Defendant exits from courtroom.)
12           (WHEREUPON, the proceedings were adjourned.)
13
14                    *  *  *
15
16             CERTIFICATE OF REPORTER
17     I certify that the foregoing is a correct transcript of
    the record of proceedings in the above-entitled matter.
18
19
20
21   _____
22   Anthony D. Frisolone, FAPR, RDR, CRR, CRI
     Official Court Reporter
23
24
25